SLIP OPINION



Cite as 2015 Ark. App. 614

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-15-253

| | |
|---|---|
| DESHAUN SCOTT<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered** October 28, 2015<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION<br>[NO. CR-2012-3973]<br><br>HONORABLE WENDELL GRIFFEN, JUDGE<br><br>AFFIRMED |

## CLIFF HOOFMAN, Judge

Appellant Deshaun Scott appeals from his conviction for second-degree murder, for which he was sentenced to forty-five years' imprisonment. He was also found guilty of using a firearm during the commission of the offense and received a sentence enhancement of fifteen years, to be served consecutively. On appeal, Scott argues that the circuit court erred in permitting the State to elicit testimony about a certain statement he had made prior to the murder. We affirm.

On December 31, 2012, Scott was charged with first-degree murder in connection with the November 10, 2012 death of his wife, Lacrisa Renee Foot. He was also charged with using a firearm during the commission of the offense. The jury trial was held on July 15–18, 2014.

At trial, Little Rock Police Officer Alicia Smith testified that she was off duty and that

she was working security at Elevations Nightclub in the early morning hours of November 10, 2012. Scott and Foot had been asked to leave the club after an altercation in which Scott threw a drink on Foot. As Smith approached them to escort them out of the club, she stated that Scott was visibly upset and that she overheard him say, "Fuck the police and her." After Scott and Foot got into their vehicle and started to drive away, Smith witnessed Foot open the passenger door and roll out of the car while it was still moving. She then saw Foot get up, walk around to the driver's side of the vehicle, and try to punch Scott. Smith heard Foot exclaim, "I can't believe you punched me in the face." Officer Hubert Bryant, who was also off duty and working security at the club that night, testified that he also witnessed the argument in the parking lot. He stated that Scott was insisting on Foot getting back into the car with him, but he informed Scott that he could not force her to go with him and told him to leave the premises. The last time Bryant saw Foot, she was talking on her cell phone and walking toward the parking lot at the bottom of the hill. He testified that he assumed she was going to meet back up with Scott based on what he overheard from her phone conversation.

Approximately one hour later, Foot's body was found lying face down in the street at the intersection of 39th Street and Katherine Street. She had a single gunshot wound to her head near her left ear, as well as blunt force trauma to the back of her skull. Although Scott initially denied knowing anything about Foot's death, he later admitted to police that he had returned to the nightclub to get Foot, that they were then arguing in the car, that he grabbed her gun in the passenger side console in order to keep it from her, and that she slapped the gun, causing it to accidentally shoot her in the head. Once he realized that Foot had been

2

SLIP OPINION

shot, Scott stated that he panicked, stopped the car, and pushed her out into the street. He then threw the gun in the Arkansas River.

Blood splatter was found on the exterior of the passenger side of the vehicle, as well as a piece of what appeared to be brain matter or body tissue. There was also a small amount of blood splatter found on the inside of the front passenger window and the door frame. The medical examiner, Dr. Frank Peretti, testified that he would have expected to see more blood on the interior of the car if Foot was shot while inside it. He further stated that Foot suffered two distinct injuries, the gunshot and the blunt force trauma to her head, and he indicated that the body had to have been moved because her skull fracture could not have been caused by her falling face down onto the pavement. Peretti also indicated that there was no evidence that Foot was shot from close range.

At the conclusion of the trial, the jury found Scott guilty of second-degree murder and of using a firearm during the commission of the offense. He was sentenced to forty-five years' imprisonment, plus a fifteen-year firearm enhancement, for a total of sixty years in the Arkansas Department of Correction. The judgment and commitment order was entered on September 16, 2014, and Scott filed a timely notice of appeal.

For his sole argument on appeal, Scott argues that the circuit court erred in permitting the State to elicit testimony from Officer Alicia Smith that he had said, "Fuck the police." He contends that this statement was both irrelevant and more prejudicial than probative, and he requests that this court reverse and remand the case for a new trial.

Trial courts have wide discretion in their evidentiary rulings, and there must be an

abuse of discretion, as well as a showing of prejudice, to justify reversal of that decision. *McCoy v. State*, 354 Ark. 322, 123 S.W.3d 901 (2003). According to Arkansas Rule of Evidence 401 (2014), relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." All relevant evidence is admissible, except as otherwise provided by the rules. Ark. R. Evid. 402 (2014). Under Arkansas Rule of Evidence 403 (2014), evidence that is otherwise admissible may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

In his argument on appeal, Scott focuses only on the portion of his statement that said, "Fuck the police." However, the complete statement admitted through Smith's testimony was actually, "Fuck the police and her." The circuit court overruled Scott's objection to this testimony, finding that it was admissible to show the course of conduct between Scott and Foot at the relevant point in time. The court cautioned the State, however, against going "any further down that road."

As Scott admits, the primary issue to be decided by the jury at trial was his mental state at the time he shot Foot. We have held that any evidence that is relevant to explain the act, show a motive, or illustrate the accused's state of mind may be independently relevant and admissible. *Conte v. State*, 2015 Ark. 220, 463 S.W.3d 686; *Berks v. State*, 2013 Ark. App. 203, 427 S.W.3d 98. Under the circumstances in this case, Smith's testimony that Scott was

visibly upset after being kicked out of the club following an altercation with Foot and that she then overheard him say, "Fuck the police and her," was relevant to show his state of mind shortly before the shooting.

Scott also contends that the evidence was more prejudicial than probative because the probative value of his statement "Fuck the police" was "nil," while the testimony had "the potential to inflame the jury's passions, elicit anger, and create a jury hostile to Scott, who not only had his life being decided by the jury but also testified." Again, Scott erroneously focuses on only a portion of the entire statement that was admitted. The statement as a whole was probative of Scott's state of mind during the time period shortly before the shooting, and the circuit court did not abuse its discretion by finding that the statement was not more prejudicial than probative based on the other evidence presented in this case. In addition to the evidence that Scott threw a drink on Foot at the nightclub and then allegedly hit her in the face when she initially got into his car after they were forced to leave the club, the jury also heard Scott's testimony at trial that he had eight prior felony convictions, including terroristic threatening and aggravated assault. He further testified that he was on probation at the time of the offense in this case. Given this evidence, Scott was not unfairly prejudiced by Smith's testimony as to his statement while leaving the club, and the circuit court did not abuse its discretion in admitting the statement. We therefore affirm.

Affirmed.

VIRDEN and KINARD, JJ., agree.

*James Law Firm*, by: *William O. "Bill" James, Jr.*, for appellant.
*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson*, Ass't Att'y Gen., for appellee.